**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Sampogna, | No. CV-20-02328-MTM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Anthony Sampogna challenges the denial of his Application for Disability Insurance Benefits under the Social Security Act (the "Act") by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint seeking judicial review of that decision (Doc. 1). The Court considers Plaintiff's Opening Brief (Doc. 21), Defendant's Response (Doc. 22), Plaintiff's Reply (Doc. 23), and the administrative record (Doc. 20). This Court affirms the Commissioner's decision because it is supported by substantial evidence and free of harmful error.

**I.    BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on June 5, 2018, for a period of disability benefits beginning on May 31, 2018, his alleged onset date. Doc. 20 at 166-67.[1] Following a telephonic hearing on April 17, 2020 (*id.* at 37–79), Administrative

---

[1] Citations to the administrative record (Doc. 20) are to the internal page numbers on the bottom right corner. All other citations to the docket are to the ECF page numbers.

Law Judge ("ALJ") David Johnson issued a written decision denying Plaintiff's application on April 29, 2020. *Id.* at 19–34. The Appeals Council upheld the decision on October 28, 2020. *Id.* at 7–12. Plaintiff commenced this action on December 2, 2020. Doc. 1.

The ALJ found Plaintiff had severe[2] physical impairments of compartment syndrome, status-post bilateral fasciotomy surgeries, carpal tunnel syndrome, neuropathy, and obesity, and non-severe mental impairments. Doc. 20 at 21–22. Despite these impairments, the ALJ found Plaintiff retained the residual functional capacity ("RFC")[3] to perform "medium work" that "does not require lifting or carrying more than 10 pounds on a frequent basis." *Id.* at 23. The ALJ further limited Plaintiff to occasional climbing of ladders, ropes, and scaffolds and frequent balancing, stooping, kneeling, crouching, crawling, climbing of ramps or stairs, reaching, handling, fingering, and feeling. *Id.* At the hearing, a vocational expert ("VE") testified an individual with similar limitations could perform Plaintiff's past relevant work as a detective and other jobs, including security guard.[4] *Id.* at 70–71. The ALJ adopted this testimony and concluded Plaintiff could perform his past relevant work as a detective and other jobs. *Id.* at 28–29.

In assessing Plaintiff's RFC, the ALJ found persuasive prior administrative medical findings from earlier phases of review and the opinion of consultative examiner, Dr. Keith Cunningham.[5] *Id.* at 27. The ALJ found the opinion of Plaintiff's treating physician, Dr.

---

[2] An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

[3] A claimant's "residual functional capacity is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

[4] The Court notes that the limitations posed by the ALJ in his second hypothetical to the VE—which presumably form the basis of the RFC determination—do not exactly match the RFC in the decision (*i.e.*, occasional balancing, stooping, kneeling, crouching, and crawling in the hypothetical, but frequent in the RFC). Doc. 20 at 23, 70. However, since the limitations from the hypothetical are more restrictive than the RFC, this would appear to be harmless error. In any event, neither party briefed the issue.

[5] The ALJ, through a scrivener's error, omits whether he deemed Dr. Cunningham's opinion persuasive. *See* Doc. 20 at 27 ("The undersigned finds Dr. Cunningham's opinion because [sic] it is consistent with and supported by exam findings . . . ."). It is apparent, however, based on the ALJ's discussion of Dr. Cunningham's report, that the ALJ intended to find it persuasive. *See id.* The ALJ also adopted limitations in his RFC similar to those

Michael Nunez, unpersuasive. *Id.* at 27–28.

## II. LEGAL STANDARD

A court may affirm, modify, or reverse a final decision of the Commissioner. 42 U.S.C. § 405(g). In reviewing the decision, a court only reviews issues raised by the parties. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). A court may set aside the decision only when it is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75 (citation omitted). However, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* at 675 (citation omitted). A court will not reverse a decision for harmless error. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 404.1520(a). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (citation omitted). The claimant bears the burden of proof at steps one through four; the Commissioner bears the burden at step five. *Id.* at 1148–49. At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At

---

that Dr. Cunningham assigned. *Compare id.* at 27 *with id.* at 376–77.

step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment expected to last 12 months or more. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing past relevant work.  *Id.* § 404.1520(a)(4)(iv).  If so, the claimant is not disabled, and the inquiry ends.  *Id.*  If not, the ALJ proceeds to step five and determines whether the claimant can perform other work existing in significant numbers in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. DISCUSSION

Plaintiff presents three issues: (1) whether the ALJ provided clear, convincing reasons for discounting his symptom testimony; (2) whether the ALJ's RFC assessment is supported by substantial evidence; and (3) whether new, material evidence warrants a remand under sentence six of 42 U.S.C. § 405(g).

**A.   The ALJ set forth clear, convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.**

In evaluating a claimant's testimony regarding the limiting effects of his pain or other symptoms, the ALJ first considers whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks and citations omitted). If the claimant presents such evidence, and there is no evidence of malingering, then "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). "In

assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citations omitted). However, "an ALJ may not reject a claimant's subjective complaints [of pain] based solely on a lack of medical evidence to fully corroborate the alleged severity of the pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *see also* Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *5 (S.S.A. Oct. 25, 2017) ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.").

Plaintiff claims the ALJ provided four reasons for discounting his symptom testimony: (1) inconsistencies with the medical evidence; (2) inconsistencies with Plaintiff's reports to his medical providers; (3) failure to seek treatment for upper extremity symptoms between August 2018 and July 2019; and (4) inconsistencies between his testimony regarding his ability to drive and his testimony regarding his limitations. Doc. 21 at 11–16. As explained below, the ALJ set forth clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony.

First, the ALJ cited significant medical evidence in his discussion of the record, which he believed refuted Plaintiff's symptom testimony regarding his upper extremity limitations. Doc. 20 at 24–26. For instance, the ALJ cited records noting Plaintiff had a normal range of motion (*id.* at 352, 375), full grip strength (or only mild weakness) (*id.* at 375, 400, 405, 459), and no muscle atrophy (*id.* at 375, 403, 421-22).

While an ALJ must look beyond the medical record to consider *all* evidence of Plaintiff's symptoms and limitations—not just objective medical evidence—the ALJ may also consider: (1) inconsistencies in the claimant's testimony, *Tonapetyan*, 242 F.3d at 1148; (2) the claimant's activities of daily living (if they involve skills or abilities that are reasonably transferable to a work setting), *Fair*, 885 F.2d at 603; and (3) "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of

treatment." *Bunnell*, 947 F.2d at 346 (citations omitted). Here, the ALJ noted Plaintiff was progressing post-operatively, "generally reported no arm pain with exertion," did not seek treatment for upper extremity symptoms for nearly one year, and reported an ability to drive for 45-60 minutes at one time. Doc. 20 at 25–26. Each of these findings is corroborated by substantial evidence in the record. For instance, the ALJ noted that Plaintiff reported no arm pain with exertion, citing records from Plaintiff's visits at Grayhawk Medical Group in March, June, and November 2019. *Id.* (citing *id.* at 399, 405, 408). These records undermine Plaintiff's testimony that he experiences pain and swelling with repetitive motion of the upper extremities or after holding small objects for extended periods of time (*see id.* at 65–67).

Plaintiff accuses the ALJ of cherry-picking by omitting discussion of other treatment notes which documented his reports of muscle aches, numbness, and weakness. Doc. 21 at 12. Plaintiff asserts that the purposes of the visits the ALJ relied on did not relate to his upper extremity impairment, and that his failure to discuss his chronic pain with a provider he sees routinely and who prescribes medications for that pain, is not tantamount to affirmatively reporting a *lack* of pain. *Id.* As such, Plaintiff argues that "the medical visits for issues other than his upper extremity symptoms cannot be relied on as substantial evidence of inconsistency between [his] allegations and reports to his doctors." *Id.* at 13.

While the Court acknowledges that Plaintiff reported other symptoms on other occasions, the Court's task is to determine whether substantial evidence supports clear, convincing reasons set forth in the ALJ decision. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").

Inconsistencies between a Plaintiff's testimony and the record constitute a clear, convincing reason to reject or discounting a claimant's symptom testimony. *Tonapetyan*, 242 F.3d at 1148. The ALJ cited substantial evidence—several distinct treatment records

ranging throughout the relevant period—to support his conclusion.[6] Doc. 20 at 26. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (citation omitted). The ALJ's interpretation of the evidence is rational, notwithstanding that there may be *other* rational interpretations.

The ALJ also noted Plaintiff's report that he could drive for 45 minutes to an hour. Doc. 20 at 26 (citing *id.* at 202). The ALJ reasoned that driving "involves extending the arms, gripping the steering wheel, and exerting force with the upper extremities . . . ." *Id.* Indeed, this appears to contrast to some degree with the physical limitations Plaintiff described at his hearing, which included pain and swelling with the simple turning of a screwdriver. *Id.* at 59–60. Although Plaintiff may have qualified his prior statement about driving (*see* doc. 21 at 15–16), even a lesser amount of driving would appear to be inconsistent with the extent of the limitations he described at his hearing—*i.e.*, the inability to hold a phone up to his ear for an hour, the inability to use his hands for minor household tasks, and the inability to lift and hold a jug of water by the handle. *Id.* at 59–60, 65, 67.

The ALJ further noted Plaintiff did not seek treatment for his upper extremity impairment between August 2018 and July 2019. *Id.* at 26. Although Plaintiff did appear to be taking Gabapentin during this time (*see id.* at 347, 407–408), "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). The Court acknowledges, however, that the ALJ may not have properly considered Plaintiff's financial burden as a reason for not seeking specialized treatment sooner. *See* Doc. 21 at 13–14. However, any error in that consideration is harmless in light of the ALJ's other reasons for discounting Plaintiff's testimony, which are clear, convincing, and supported by substantial evidence. *See Treichler*, 775 F.3d at 1099. Accordingly, the Court

---

[6] The ALJ also cited earlier visits from February and August 2018. Doc. 20 at 26 (citing *id.* at 351, 358). While Plaintiff reported muscle aches and weakness in February 2018, which pre-dates his alleged onset date of May 31, 2018, he still reported "no arm pain on exertion." *Id.* at 358.

- 7 -

finds no basis to reverse the decision on this issue.

**B.     Substantial evidence supports the RFC finding.**

Plaintiff claims the RFC finding is not supported by substantial evidence because the prior administrative medical findings and the report of a consultative examiner, which the ALJ found persuasive, were based on an incomplete record that did not include electrodiagnostic testing confirming myopathy in his upper extremities in December 2019 and orthopedic examinations from December 2019 and January 2020. Doc. 21 at 17–18.

Importantly, however, if Plaintiff is correct, an ALJ could only rarely find the previous administrative medical findings persuasive because these physicians are involved earlier in the administrative process. In many cases some significant medical development has occurred between the reconsideration level and the hearing, as administrative hearings are often subject to considerable wait times—over one year in this case.[7]

Moreover, with respect to opinion evidence, the regulations provide an ALJ should consider the persuasiveness of a medical opinion using several factors, including supportability, consistency, medical specialization, and the existence of a treating relationship. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors in evaluating an opinion's persuasiveness, and the ALJ must articulate how he considered both factors.[8] *Id.* § 404.1520c(b)(2).

The question is not whether these physicians had the opportunity to consider all of the medical evidence, but whether their opinions are consistent with, and supported by, the medical evidence, and the extent to which the ALJ cited substantial evidence to that effect. *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported

---

[7] The reconsideration decision is dated February 2019, and the hearing took place in April 2020. *See* Doc. 20 at 19, 104.

[8] The ALJ is not required to discuss his analysis of the other factors unless two or more medical opinions or prior administrative findings are equally well-supported and consistent with the evidence, but not identical. 20 C.F.R. § 404.1520c(b)(2), (3).

by substantial evidence, shall be conclusive . . . ."). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted); *see also* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

The ALJ found the prior administrative medical findings and the report of a consultative examiner persuasive and explicitly addressed the electrodiagnostic testing Plaintiff describes. Doc. 20 at 27. The ALJ ultimately concluded the limitations these physicians assigned were appropriate considering that evidence. *Id.* It is precisely within the province of the ALJ to resolve conflicts in the medical record. *Ford*, 950 F.3d at 1149. The regulation provides, "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ explicitly found the opinions of Drs. Sampat, Spellman, and Cunningham were consistent with one another and supported by the record, and cited substantial evidence to that effect. *Id.* at 27. For instance, the ALJ noted intact grip strength and normal extremity movement despite some positive findings on electromyography and nerve conduction studies.[9] *Id.* Accordingly, the Court

---

[9] This is supported by the record. The examination the ALJ cited from June 2018 showed right hand weakness and abnormal sensation, but otherwise normal tone and normal extremity movement. Doc. 20 at 355. The ALJ cited normal strength, tone, and movement of the extremities upon Plaintiff's examination in August 2018. *Id.* at 352. The ALJ cited Dr. Cunningham's examination showing Plaintiff's ability to make full handgrips and showing preserved upper extremity range of motion in September 2018. *Id.* at 375. The ALJ cited medical records showing Plaintiff exhibited normal motor strength and tone with normal movement in September 2019. *Id.* at 400. The ALJ cited mild weakness with bilateral grip in December 2019. *Id.* at 459. Further, the ALJ provided an extensive discussion regarding his decision to find the opinion of Plaintiff's treating family doctor, Michael Nunez, M.D., not persuasive. *Id.* at 28. For instance, the ALJ noted that Dr. Nunez assigned Plaintiff significant limitations in standing and walking, but he wrote "N/A" when

finds no basis to reverse the decision on this issue.

### C. New evidence does not warrant a remand.

Plaintiff claims new and material evidence justifies remanding the matter under sentence six of 42 U.S.C. § 405(g), which authorizes a court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Doc. 21 at 19. The new evidence Plaintiff presents consists of additional medical records from November 18, 2020 to April 9, 2021, procured after his hearing on April 17, 2020. Doc. 21-1. These records include medical visits with bone and joint specialists and neck specialists (*id.* at 12–18, 22–23, 26–30), updated electrodiagnostic testing and a cervical spine MRI (*id.* at 33–39), an operative report of a cervical spine surgery in March 2021 (*id.* at 43–45), and post-operative physical therapy (*id.* at 1–10). Plaintiff argues this evidence is material because it involves additional testing, diagnosis, and treatment for the same upper extremity symptoms that were the basis of his disability claim during the relevant period. Doc. 21 at 20. Plaintiff argues good cause is satisfied because this evidence did not exist during the relevant period. *Id.*; Doc. 23 at 9.

"New evidence is material when it bears directly and substantially on the matter in dispute, and if there is a reasonable possibility that the new evidence would have changed the outcome of the determination." *Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010) (cleaned up). However, the evidence must be "material to and probative of [the claimant's] condition *as it existed at the relevant time*–at or before the disability hearing." *Sanchez v. Sec'y of Health and Hum. Servs.*, 812 F.2d 509, 511 (9th Cir. 1987) (emphasis added).

The new evidence Plaintiff presents related to his upper extremities is not material; it does not represent this condition as it existed during the relevant period—*i.e.*, "at or before" April 17, 2020, the date of his hearing. To the contrary, the evidence illustrates a

---

prompted to explain the medical findings supporting these limitations. *Id.* at 28, 382. The ALJ noted Plaintiff's lack of specialized treatment for his reportedly significant upper extremity limitations until less than six months before Plaintiff's hearing. *Id.* at 28. Plaintiff did not specifically brief the issue of the ALJ's rejection of Dr. Nunez's opinion.

- 10 -

potential *worsening* of the condition since the hearing. Dr. Glen Halvorson, who conducted Plaintiff's electrodiagnostic testing in December 2019 and November 2020, noted in his November 2020 report: "*progressive changes* since the prior exam," including "*additional* atrophy of [Plaintiff's] forearm muscles." Doc. 21-1 at 33 (emphasis added); *see* Doc. 20 at 384. Because this evidence does not reflect Plaintiff's upper extremity condition as it existed "at or before" his hearing on April 17, 2020, it is not material. *See Luna*, 623 F.3d at 1034; *Sanchez*, 812 F.2d at 511; *De Botello v. Astrue*, No. CV-10-01203-PHX-JAT, 2011 WL 3292401, at *10 (D. Ariz. Aug. 1, 2011) ("Plaintiff must show 'that the new evidence is material to and probative of [the] condition as it existed at the relevant time-at or before the disability hearing.'" (quoting *Sanchez*, 812 F.2d at 511)).

Plaintiff, however, asserts that the updated electrodiagnostic testing implies the existence of muscle atrophy and diminished muscle recruitment during the relevant period, and that the level of cervical disc degeneration revealed on the MRI is so significant as to imply its existence during the relevant period. Doc. 21 at 20–21. However, the ALJ had cited numerous records that specifically noted an *absence* of atrophy and the presence of full grip strength on examination during the relevant period. Doc. 20 at 26 (citing *id.* at 375, 403, 421–22, 426–27, 430–31, 435–36, 462, 464). Given the ALJ's consideration of those records, Plaintiff fails to show a "reasonable probability" that the records presented here would have changed the outcome. *See Luna*, 623 F.3d at 1034. The Court addresses the evidence relating to Plaintiff's cervical disc degeneration below.

The new evidence of Plaintiff's cervical disc degeneration is not material, first, because Plaintiff's degenerative disc disease was not at issue during the hearing; there was no evidence of it in the record before the ALJ nor was there any mention of it in Plaintiff's application materials.[10] Doc. 20 at 37–79, 189–197, 200–06, 217–24; *see Mayes v. Massanari*, 276 F.3d at 462 ("Mayes has not shown that the new evidence [pertaining to herniated disc diagnosis] was material, as the record lacks evidence that she had herniated

---

[10] In his application, Plaintiff alleged disability based on obesity and numbness, weakness, and chronic pain in his upper extremities. Doc. 20 at 190.

- 11 -

discs at and before the ALJ Hearing."). At most, the newly-presented evidence of Plaintiff's cervical disc degeneration merely gives new insight into the *cause* of the symptoms Plaintiff had testified to at the hearing. On February 8, 2021, based on a "second review of [Plaintiff's] MRI and NCS/EMG," Plaintiff's bone and joint specialist clarified that he believed Plaintiff's neck was "partly contributing" to his upper extremity symptoms. Doc. 21-1 at 21. While Plaintiff may not have been initially aware that his symptoms were related to cervical degenerative disc disease, the *type* of symptoms he reported, both before and after the ALJ decision, were the same. *Compare* Doc. 20 at 200–03, 396, 457, 459 *with* Doc. 21-1 at 29. As discussed, the ALJ properly discounted Plaintiff's testimony regarding those symptoms for reasons unrelated to a lack of objective medical evidence, which weighs against a finding that there is a "reasonable probability" that this evidence would have changed the outcome. *See Luna*, 623 F.3d at 1034. To the extent the newly-presented evidence of Plaintiff's degenerative disc disease can be considered material as being "linked" to Plaintiff's upper extremity symptoms as they existed at or before the hearing,[11] remand is not warranted because Plaintiff fails to show good cause for not obtaining this evidence sooner.

"To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Mayes*, 276 F.3d at 463; *see Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir.1985) ("If new information surfaces after the Secretary's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied"). "A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied." *Mayes*, 276 F.3d at 463; *see also Allen v. Sec'y of Health and Hum. Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (explaining that "the 'good cause' requirement would be meaningless if such circumstances were sufficient to allow introduction of new evidence").

The earliest new record Plaintiff presents here is dated November 18, 2020—almost

---

[11] *See De Botello*, 2011 WL 3292401, at *11 ("Evidence of a condition linked to an ongoing disability alleged during the hearing is material, even if that evidence was gathered later.").

- 12 -

seven months after the ALJ issued his decision on April 29, 2020, and several weeks after the Appeals Council denied review on October 28, 2020. Doc. 21-1 at 29–32. In *Allen*, the Ninth Circuit declined to remand based on new, material evidence because the claimant had failed to show "good cause for his failure to provide [the evidence] earlier in the proceedings." 726 F.2d at 1473. The *Allen* court noted that the claimant was aware of his conditions at the time of the administrative hearing, but did not procure the reports and testing he sought to admit until later. *Id*. It concluded that "[t]he obvious explanation is that when [the claimant] was unsuccessful in the agency and district court hearings, he sought out new expert witnesses who might better support his disability claim." *Id.*

The *Allen* court discussed *Ward v. Schweiker*, an earlier Ninth Circuit opinion where the agency had conceded the claimant had shown good cause but the court declined to remand because the new evidence was immaterial. *Id*. (citing *Ward v. Schweiker*, 686 F.2d 762 (9th Cir. 1982)); *Ward*, 686 F.2d at 764. The *Allen* court noted that good cause existed in *Ward* because the claimant's doctors had failed to diagnose an impairment until well after the decision. *Allen*, 726 F.2d at 1473. The *Allen* court explained:

> the claimant [in *Ward*] could not have obtained the evidence at the time of her hearing. In our case, Allen knew of his mental problems and had had several prior psychiatric evaluations. The reports merely contain new interpretations of the same mental problems discussed in the earlier evaluations. He has not alleged that he could not have had these tests and evaluations made earlier.

*Id.*[12]

Here, like the claimant in *Allen*, Plaintiff was fully aware of his symptoms and limitations prior to his administrative hearing. Moreover, Plaintiff has not alleged or shown that he could not have obtained evidence relating to his cervical disc degeneration sooner. Plaintiff had ample opportunity to pursue additional treatment and further explore the cause of his upper extremity pain, numbness, and weakness, well before the ALJ hearing. In fact, he was directly referred to a hand specialist in the months preceding his hearing. Doc. 20

---

[12] The *Allen* court ultimately remanded on other grounds. *Allen*, 726 F.2d at 1473.

- 13 -

at 458. But as he explained at the hearing, he never attended that appointment because he was not interested in having surgery. *Id.* at 51–52. And, as the ALJ noted, Plaintiff did not seek out additional treatment for his upper extremity impairment for almost an entire year during the relevant period.[13] *Id.* at 26. Plaintiff did not seek specialized treatment for his upper extremities with an orthopedist until about four months prior to the hearing. *Id.* at 459–60. The Court acknowledges Plaintiff's testimony that difficulties with his insurance coverage created barriers to seeking specialized treatment. *Id.* at 63–64. Nonetheless, Plaintiff was able to later seek the treatment he testified was so costly, and he had initially testified that he did not follow up with the hand specialist in January 2020 because he was not interested in having surgery due to the risk of his condition worsening. *Id.* at 52. He has not alleged or shown that the new evidence pertaining to this cervical disc degeneration could not have been obtained prior to the hearing. Therefore, he fails to show good cause to remand the matter based on that evidence. *See Key*, 754 F.2d at 1551; *Allen*, 726 F.2d at 1473; *De Botello*, 2011 WL 3292401, at *12 ("Plaintiff has not explained why she did not or could not have seen Dr. Le or the other doctors providing the favorable records before the hearing before the ALJ. She has not adequately explained why the testing done by those doctors could not have been conducted before the hearing.").

## IV.    CONCLUSION

Because the Commissioner's decision denying Plaintiff's application for disability insurance benefits was supported by substantial evidence in the record and free of harmful legal error,

**IT IS ORDERED** that the decision of the Commissioner is **affirmed**.

//
//
//
//

---

[13] However, Plaintiff's providers were refilling his Gabapentin prescriptions during this period. *See* Doc. 20 at 347, 350, 407.

- 14 -

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter final judgment accordingly and terminate this case.

Dated this 7th day of July, 2022.

*Michael T. Morrissey*
Honorable Michael T. Morrissey
United States Magistrate Judge